UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ZEN-NOH GRAIN CORPORATION, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | NO. 10-4367 |
| ) | |
| LISA JACKSON, in her official capacity ) | SECTION R |
| as Administrator, United States ) | |
| Environmental Protection Agency, ) | MAGISTRATE 1 |
| ) | |
| Defendant. ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Zen-Noh Grain Corporation ("Zen-Noh"), for its amended complaint for declaratory and injunctive relief against Defendant, Lisa Jackson, in her official capacity as Administrator of the United States Environmental Protection Agency (the "Administrator" or "EPA"), states:

### I.
### Parties

1.     Zen-Noh is a Louisiana corporation that operates a grain export facility in St. James Parish, Louisiana. Zen-Noh's St. James Parish elevator is located adjacent to property on which Consolidated Environmental Management, Inc. – Nucor Steel Louisiana ("Nucor") proposes to construct an iron manufacturing facility under color of authority of PSD Permit No. PSD-LA-740 (the "PSD Permit") and Part 70 operating permit No. 2560-00281-V0 (the "Part 70 Permit) (collectively, with the PSD Permit, the "Nucor Permits"), issued by the Louisiana Department of Environmental Quality ("LDEQ").

{B0410771.1}

2. Lisa Jackson is the Administrator of the United States Environmental Protection Agency and, in her official capacity, is responsible for implementing the requirements and mandates of the Clean Air Act, 42 U.S.C. § 7401, et seq. (the "Act").

3. In particular, the Administrator shall, without discretion, object to the issuance of any permit that is not in compliance with the applicable requirements of the Act. 42 U.S.C. § 7661d(b)(1). If the Administrator does not object to the issuance of a permit, the Administrator shall grant or deny a timely petition to take such action within 60 days after the petition is filed. 42 U.S.C. § 7661d(b)(2). The Administrator shall also take measures necessary to prevent the construction of a major emitting facility that does not conform to the requirements for the prevention of significant deterioration of air quality ("PSD") set forth in Subchapter I, Part C of the Act. 42 U.S.C. 7477.

## II.
## JURISDICTION AND VENUE

4. In this suit, Zen-Noh seeks a declaration that the Administrator has failed to perform certain nondiscretionary duties required under the Act and that the failure to perform these duties is a violation of the Act, and an order directing the Administrator to perform these nondiscretionary duties.

5. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a), 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

6. Venue is proper in this Court. 42 U.S.C. § 7604(c).

## III.
## FACTS

### The Petition

7. In June 2009, Nucor submitted a revised application for permits to construct and operate a 6 million tons per year pig iron manufacturing plant in St. James Parish on property adjacent to the Zen-Noh export elevator.

8. On about March 11, 2010, LDEQ issued notice of draft PSD and Part 70 permits for the proposed pig iron manufacturing plant.

9. Zen-Noh submitted comments to LDEQ objecting to the issuance of the draft PSD and Part 70 permits, on April 19, 2010, and May 3, 2010. Zen-Noh also presented comments during the public hearing on the draft permits. Zen-Noh's comments were submitted timely, pursuant to the terms of the public notice and an extension granted by LDEQ.

10. LDEQ issued the final PSD Permit and Part 70 Permit on about May 25, 2010.

11. The PSD provisions in the Act prohibit the construction of major sources of regulated air pollutants unless the facility has received a PSD permit that assures, among other things, that best available control technology ("BACT") will be implemented for all sources of regulated air pollutants, and emissions from the proposed facility will not cause or contribute to air pollution in excess of a national ambient air quality standard ("NAAQS") or a maximum allowable increase ("PSD increment") for any pollutant. 42 U.S.C. § 7475.

12. The Nucor Permits do not comply with the Act. Among other things, the permits do not require or properly support and document that BACT be implemented for all major sources of regulated pollutants, do not require that maximum achievable control technology ("MACT") be implemented for all sources of hazardous air pollutants ("HAPs"), and do not

demonstrate and ensure that emissions from the proposed pig iron manufacturing plant will not cause violations of any NAAQS or PSD increment.

13. On June 25, 2010, Zen-Noh filed a petition (the "Petition") requesting that the Administrator object to the issuance of the Nucor Permits and take such measures necessary to prevent construction of the Nucor facility, pursuant to the Administrator's authorities and non-discretionary duties under 42 U.S.C. § 7661d(b)(1) and § 7477. The Petition was timely filed within 60 days after the expiration of the 45-day review period provided in 42 U.S.C. § 7661d(b)(1). A copy of the Petition is attached as Exhibit 1 hereto.

14. The time for the Administrator to grant or deny the Petition expired on August 24, 2010.

15. On September 9, 2010, Zen-Noh served notice (the "Notice"), pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. Part 54, of the intent to file a citizen suit against the Administrator, pursuant to 42 U.S.C. § 7604(a)(2), for the Administrator's failure to perform a nondiscretionary duty under the Act, namely to grant or deny the Petition. The Notice was properly served on the Administrator, the Regional Administrator, LDEQ, and Nucor. A copy of the Notice is attached as Exhibit 2 hereto.

16. The Administrator has not objected to the issuance of the Nucor Permits, granted or denied the Petition, or taken such measures as are necessary to prevent construction of the proposed pig iron manufacturing plant.

Additional Grounds for Objection to Issuance of the Nucor Permits

17. Construction of the proposed pig iron manufacturing plant has not commenced.

18. On about August 20, 2010, Nucor submitted an application for a PSD permit to construct a 5 million tons per year direct reduced iron ("DRI") manufacturing plant on the site of

the proposed pig iron manufacturing plant. Nucor submitted a revised application on about September 24, 2010. Nucor submitted the DRI permit application less than 18 months after Nucor submitted the June 2009 revised pig iron permit application. Copies of the DRI permit applications are attached as <u>Exhibit 3</u> and <u>Exhibit 4</u> hereto.

19. The Nucor Permits, the application for the pig iron manufacturing plant, information made available for public review and comment prior to issuance of the Nucor Permits, and the Statement of Basis for the Nucor Permits, do not include any reference to the DRI manufacturing plant or emissions from the DRI manufacturing plant.

20. The Nucor Permits and the Statement of Basis for the Nucor Permits do not subject emission sources in the DRI manufacturing plant to the best available control technology for each regulated pollutant emitted, analyze the air quality impacts associated with the DRI manufacturing plant, or impose enforceable emission limitations or other conditions as are necessary to assure compliance with applicable requirements under the Act or the Louisiana State Implementation Plan.

21. According to the DRI permit applications and public statements made by Nucor officials, Nucor intends to construct the DRI manufacturing plant before constructing the pig iron manufacturing plant. <u>Exhibit 5</u> hereto contains copies of public statements issued by Nucor.

22. According to the DRI permit applications, the proposed DRI and pig iron manufacturing plants will share several processes, including marine operations, conveyors, and material storage areas.

23. According to the DRI permit applications and public statements made by Nucor officials, iron produced by the proposed DRI and pig iron manufacturing plants will be shipped

to Nucor steel manufacturing plants and will be fed to a future steel manufacturing plant Nucor intends to construct on the St. James Parish property.

24.  The DRI permit application treats emissions from the proposed DRI manufacturing plant as being separate from the emissions from the proposed pig iron manufacturing plant, and does not demonstrate that aggregated emissions from the DRI and pig iron manufacturing plants will not cause an exceedance of all NAAQS and PSD increments.

25.  Zen-Noh and the public have been denied the opportunity to review and comment on the air quality impacts of the aggregate DRI and pig iron manufacturing plant, in violation of 42 U.S.C. §§ 7470(5), 7475(a)(2), and 7475(e)(2).

26.  Upon information and belief, emissions from the aggregate DRI and pig iron manufacturing plant will cause a violation of one or more NAAQS or PSD increments.

27.  Upon information and belief, Nucor submitted the DRI permit application after LDEQ issued permits for the pig iron manufacturing plant for the purpose of avoiding the ambient air quality impact analysis, public participation, and other requirements under PSD.

28.  The Nucor Permits must be terminated and the proposed DRI and pig iron manufacturing plants must be permitted under a single, aggregate PSD permit and a single, aggregate Part 70 permit. *See* Darryl D. Tyler, "Revised Draft Policy on Permit Modifications and Extensions," July 5,1985, pp. 8-9, 13-15; *see, e.g.*, John B. Rasnic, "Applicability of New Source Review Circumvention Guidance to 3M-Maplewood, Minnesota," June 17, 1993 (finding that submittal of applications within 18 months of each other is strong evidence of an intent to circumvent preconstruction review).

29.  On July 30, 2010, LDEQ issued a permit (the "LPDES Permit") pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, authorizing construction and discharges

from the proposed pig iron permit. The LPDES Permit is based on Nucor's certification that the proposed pig iron manufacturing plant will not discharge process wastewater. Upon information and belief, the proposed DRI manufacturing plant will discharge process wastewater, at least until the proposed pig iron manufacturing plant is constructed.

30. Upon information and belief, treatment chemicals and processes necessary to treat process wastewater discharged by the proposed DRI manufacturing plant will result in emissions of regulated air pollutants subject to applicable requirements that are not reflected in the Nucor Permits, but the public and Zen-Noh have not been given an opportunity to review and comment on those emissions, or on wastewater discharges from the DRI manufacturing plant, because Nucor has not submitted an LPDES permit modification application for the DRI manufacturing plant.

31. On October 28, 2010, Zen-Noh requested LDEQ to terminate the PSD Permit and the LPDES Permit because neither is valid given Nucor's proposal to first construct the DRI manufacturing plant. A copy of the October 28, 2010, request is attached as <u>Exhibit 6</u> hereto. LDEQ has not responded to Zen-Noh's request.

32. On October 13, 2010, Nucor submitted an application to modify the Nucor Permits to reflect proposed physical modifications necessary to comply with the NAAQS for NOx. A copy relevant portions of the October 13, 2010 application is attached as <u>Exhibit 7</u> hereto.

33. On October 22, 2010, Nucor submitted a greenhouse gas ("GHG") analysis for the proposed DRI plant, in which Nucor states that DRI would be a preferred raw material for Nucor's steel mills, compared to pig iron, because the DRI manufacturing plant would emit

about 75% less GHG than the pig iron plant would emit. A copy of the October 22, 2010, GHG analysis is attached as <u>Exhibit 8</u> hereto.

34.   Also on October 22, 2010, Nucor submitted an addendum to the DRI manufacturing plant permit application. Nucor states that all roads in the DRI manufacturing plant will be paved. Nucor does not provide any basis for distinguishing why all roads in the pig iron plant cannot be paved. A copy of relevant portions of the October 22, 2010, addendum is attached as <u>Exhibit 9</u> hereto.

35.   On October 28, 2010, Nucor submitted an addendum to the October 13, 2010 permit modification request. Nucor proposes to eliminate the heat recovery steam generating ("HRSG") bypass vents for the coke oven batteries in the pig iron manufacturing plant. A copy of relevant portions of the October 28, 2010, addendum is attached as <u>Exhibit 10</u>, hereto.

36.   Upon information and belief, the documents contained in Exhibits 7-10 were not posted on LDEQ's Electronic Document Management System ("EDMS") until after November 19, 2010.

37.   On or about Thursday, November 25, 2010, LDEQ posted for public comment a proposed PSD permit and Part 70 permit for the DRI manufacturing plant (the "Draft DRI Permit") and proposed modifications to the PSD Permit and Part 70 Permit for the pig iron manufacturing plant (collectively, the "Draft Permit Modification"). Copies of relevant portions of the Draft DRI Permit and Draft Permit Modifications are attached as <u>Exhibit 11</u> and <u>Exhibit 12</u> hereto.

38.   When LDEQ issued the Nucor Permits, LDEQ eliminated SCR from consideration as BACT for NOx emissions from the coke ovens, sinter plant MEROS system,

hot blast stoves and power boilers because, according to LDEQ, SCR would be technically infeasible for these sources.

39. Nucor now proposes to install selective catalytic reduction ("SCR") technology on the coke oven flue gas desulfurization ("FGD") stacks, sinter plant MEROS stack, hot blast stove, power boilers, and pulverized coal injection ("PCI") mill. Nucor also proposes to eliminate Blast Furnace No. 2 and the corresponding hot blast stove.

40. Nucor's proposal to install SCR technology for sources in the pig iron manufacturing plant is supported by reference to an evaluation of SCR on the MEROS system on the sinter plant at a mill located in Austria. No report of that evaluation was provided to or requested by LDEQ, or made available for public review, prior to LDEQ's issuance of the Nucor Permits or prior to LDEQ's publication of the Draft Permit Modifications.

41. The Draft Permit Modifications reflect that SCR will be installed on the coke oven FGD stacks, sinter plant MEROS system, hot blast stove, power boilers and PCI mill.

42. The proposal and requirement to install SCR on these sources prove that it is technically and economically feasible to do so. The Nucor Permits should have required SCR as BACT for the the coke oven FGD stacks, sinter plant MEROS system, hot blast stoves, power boilers and PCI mill.

43. Collectively, the coke oven FGD stacks, sinter plant MEROS system, hot blast stoves, power boilers and PCI mill are permitted to emit 3,555.94 tons per year of NOx under the Nucor Permits. The same sources would be permitted to emit only 413.01 tons per year of NOx under the Draft Permit Modifications.

44. The Draft Permit Modifications do not require SCR as BACT for the coke oven FGD stacks, sinter plant MEROS system, hot blast stove, power boilers and PCI mill. The NOx

control efficiencies and emission levels for these sources in the Draft Permit Modifications will not be federally enforceable.

45. The PSD Permit does not include a BACT determination for coke oven maintenance emissions, i.e. HRSG bypass vents. In the Response to Comments issued with the Nucor Permits, LDEQ states that spare HRSG units were not selected as BACT for coke oven maintenance emissions. Likewise, LDEQ stated that switching from the manufacture of pig iron to the manufacture of DRI is not BACT for coke oven emissions.

46. Nucor now proposes to eliminate HRSG bypass vent emissions, but does not provide any technical explanation for how they would be eliminated.

47. The Draft Permit Modifications reflect the elimination of HRSG bypass vent emissions but do not indicate how they would be eliminated.

48. Upon information and belief, HRSG bypass vent emissions can be eliminated only by (a) providing spare, redundant or oversized HRSG units, so that all coke oven gases can be cooled in a HRSG unit when one HRSG unit is shut down for the annual maintenance required for all HRSG units, (b) switching from non-recovery coke oven technology to byproduct recovery coke oven technology, or (c) switching from pig iron manufacture to DRI manufacture. Switching from non-recovery coke oven technology to byproduct recovery coke oven technology would increase emissions of hazardous air pollutants and therefore should not be considered BACT for coke oven maintenance emissions.

49. The proposal and requirement to eliminate HRSG bypass vent emissions prove that it is technically and economically feasible to do so. The Nucor Permits should have required elimination of HRSG bypass emissions, by (a) providing spare, redundant or oversized HRSG units, so that all coke oven gases can be cooled in a HRSG unit when one HRSG unit is shut

down for the annual maintenance required for all HRSG units, (b) switching from pig iron manufacture to DRI manufacture, as BACT.

50. The Part 70 Permit authorizes emissions from each of the ten HRSG bypass vents for eight days each year. While a HRSG unit is down for maintenance, the coke ovens that vent to that HRSG unit – one-tenth of the total coke ovens at the pig iron manufacturing plant -- will vent directly to the atmosphere through the HRSG bypass vent, without any air pollution control. This is because coke oven gases are too hot for the FGD-baghouse system unless they are cooled in a HRSG unit. Collectively, the Part 70 Permit authorizes the HRSG bypass vents to emit 26.81 tons per year of NOx, 65.22 tons per year of 10-micron particulate matter ("$PM_{10}$") and 722.52 tons per year of sulfur dioxide ("$SO_2$").

51. The Draft Permit Modifications do not require elimination of HRSG bypass vents as BACT for coke oven maintenance emissions. The elimination of NOx, $PM_{10}$, and $SO_2$ emission from coke oven maintenance events in the Draft Permit Modifications will not be federally enforceable.

52. The proposal and requirement to pave all roads in the DRI manufacturing plant demonstrate that the Nucor Permits should have required all roads to be paved as BACT for fugitive dust emissions from roads.

53. Exhibit 9 and the Draft DRI Permit describe which processes that were permitted for the pig iron manufacturing plant would be switched over to (and required for) the DRI manufacturing plant. Compared to the 6 million ton per year pig iron manufacturing plant authorized by the Nucor Permits, the 5 million ton per year DRI manufacturing plant proposed by Nucor will reduce emissions by at least 549.83 tons per year (81%) of $PM_{10}$, 3,776.88 tons per year (99.6%) of NOx, 3,781.87 tons per year (99.3%) of $SO_2$, 28,816.93 tons per year (98%)

of carbon monoxide ("CO"), 231.3 tons per year (87%) of volatile organic compounds ("VOC"), 0.372 tons per year (99.2%) of lead, and 85.53 tons per year (80%) of hazardous air pollutants ("HAP"). Switching from the pig iron process to the DRI process also would eliminate 100% of the dioxin and hydrogen sulfide emissions from the sinter plant and sulfuric acid mist emissions from the coke ovens, which were not adequately quantified in the Nucor Permits.

54. Nucor's application for a permit to construct a 5 million ton per year DRI manufacturing plant demonstrates that the Nucor Permits should have required that the DRI manufacturing process be applied as BACT (in part) for the manufacture of iron feed materials for Nucor's steel mills. The DRI manufacturing process emission sources themselves must also apply BACT.

55. AERMOD modeling conducted for Nucor (see Exhibit 7) predicts order-of-magnitude exceedances of the 1-hour $NO_2$ NAAQS, even without contributing sources from the pig iron or DRI manufacturing plants. This information was not reasonably available before June 25, 2010.

56. The Nucor Permits are required to but do not require application of the Lowest Achievable Emission Rate ("LAER") for sources of NOx emissions in the pig iron manufacturing plant.

57. Zen-Noh's objections to the Nucor Permits, and this appeal, are not moot. The Nucor Permits have not been terminated, and the Draft Permit Modifications can be withdrawn at any time before issuance -- and resolution of any appeal -- of a final revised permit for the pig iron manufacturing plant.

## IV.
## Claims

### Count I: Violation of 42 U.S.C. § 7661d(b)

58. Zen-Noh incorporates by reference the allegations in paragraphs 1-57 above.

59. The Administrator has a duty to object to the issuance of any permit that is not in compliance with the applicable requirements of the Act. 42 U.S.C. § 7661d(b)(1).

60. The duty imposed by 42 U.S.C. § 7661d(b)(1) is not discretionary.

61. If a timely petition is filed pursuant to 42 U.S.C. § 7661d(b)(2), the Administrator has a duty to grant or deny the within 60 days after the petition is filed. 42 U.S.C. § 7661d(b)(2).

62. The duty imposed by 42 U.S.C. § 7661d(b)(2) is not discretionary.

63. The Administrator's failure to object to the issuance of the Nucor Permits and failure to grant or deny the Petition by August 25, 2010 are violations of the Act.

### Count II: Declaratory Judgment, 28 U.S.C. § 2201.

64. Zen-Noh incorporates by reference the allegations in paragraphs 1-63 above.

65. Pursuant to 42 U.S.C. § 7661d(b)(2), in deciding whether to grant or deny a petition, the Administrator shall consider objections that were not raised during the public comment period if "the grounds for such objection arose after such period."

66. Zen-Noh, the general public, and EPA had no opportunity to review or comment on the BACT or air quality impacts for the proposed DRI manufacturing plant -- or the aggregate DRI and pig iron manufacturing plant -- during the public comment period for the Nucor Permits because Nucor did not reveal the existence of its plan to construct the DRI manufacturing plant until after the Nucor Permits were issued and after the expiration of the time for filing petitions pursuant to 42 U.S.C. § 7661d(b)(2).

67. The Draft DRI Permit and Draft Permit Modifications provide additional evidence, not available before the close of the public comment period, that the Nucor Permits do not require BACT to be applied for emissions of NOx from the coke oven FGD stacks, sinter plant MEROS system, hot blast stoves, power boilers and PCI mill, emissions of coke oven gas from HRSG bypass vents, emissions of fugitive dust from roads, and emissions of all pollutants from the manufacture of iron feed materials.

68. Information submitted with Nucor's application for the Draft Permit Modifications provides evidence, not available before the close of the public comment period, that LAER is required for emissions of NOx from the pig iron manufacturing plant.

69. Zen-Noh is entitled to declaratory and injunctive relief that the additional grounds for objection to issuance of the Nucor Permits, described in paragraphs 17-57, should be considered by the Administrator in deciding whether to object to the Nucor Permits.

## V.
## Prayer for Relief

Zen-Noh respectfully requests the Court to enter judgment for Zen-Noh and against the Administrator:

1) Declaring that the Administrator's failure to perform the nondiscretionary duty to grant or deny the Petition within 60 days is a violation of the Act, 42 U.S.C. § 7661d(b)(2);

2) Declaring that the Administrator's failure to object to the issuance of the Nucor Permits is a violation of the Act, 42 U.S.C. § 7661d(b)(1);

3) Declaring that the additional grounds for objection to issuance of the Nucor Permits are incorporated into the Petition;

4) Ordering the Administrator to consider the additional grounds for objection to issuance of the Nucor Permits;

5) Ordering the Administrator to grant or deny the Petition within 60 calendar days of this Court's ruling;

6) Ordering the Administrator to object to the issuance of the Nucor Permits;

7) Awarding Zen-Noh the costs of this litigation, including reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 7604(d); and

8) Granting all other just and proper relief for Zen-Noh.

Respectfully submitted,

BALDWIN HASPEL BURKE & MAYER LLC

s/ Paul N. Vance
PAUL N. VANCE, T.A. (#13007)
JAMES G. BURKE, JR. (#3676)
1100 Poydras Street
Suite 2200
New Orleans, LA 70163
Jburke@bhbmlaw.com
pvance@bhmblaw.com
Telephone: 504.569.2900
Facsimile: 504.569.2099

Of Counsel:
J. Michael Bowman (Indiana Atty. No. 24804-49)
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware Street
Indianapolis, Indiana 46202
mbowman@psrb.com
Telephone: 317.637.0700
Facsimile: 317.673.0710

*Attorneys for Zen-Noh Grain Corporation*